[Cite as *State v. Locker*, 2015-Ohio-4953.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 2015 CA 00050 |
| GARY LOCKER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Canton Municipal
                              Court, Case No.  2015 TRC 0207


JUDGMENT:                     Affirmed


DATE OF JUDGMENT ENTRY:       November 30, 2015


APPEARANCES:

For Plaintiff-Appellee               For Defendant-Appellant

JOSEPH MARTUCCIO                     JEFFRY SERRA
CANTON LAW DIRECTOR                  THE FERRUCCIO LAW FIRM
TYRONE D. HAURITZ                    301 Cleveland Avenue NW
CANTON CITY PROSECUTOR               Canton, Ohio  44702
218 Cleveland Avenue SW
Canton, Ohio  44701

*Wise, J.*

{¶1} Appellant Gary Locker appeals the decision of the Canton Municipal Court, Stark County, which denied his motion to suppress evidence in an OVI case.

{¶2} Appellee is the State of Ohio.

STATEMENT OF THE FACTS

{¶3} The relevant facts leading to this appeal are as follows:

{¶4} On Friday, January 9, 2015, at approximately 11:35 p.m., Sergeant Goodnite initiated a traffic stop on Walnut Avenue southbound near Third Street in the city of Canton. (T. at 5). Walnut Avenue is a one-way street, with three lanes that travel southbound. *Id.* Before stopping the vehicle, Sgt. Goodnite observed Appellant's vehicle make a right-hand turn onto Walnut. *Id.* While making this turn, Appellant committed a marked lanes offense, in violation of R.C. §4511.33. (T. at 19). The marked lanes offense occurred when Appellant's vehicle crossed the right lane over the dash line into the middle lane, and then went back into the right lane. (T. at 5).

{¶5} Sgt. Goodnite then stopped Appellant's vehicle for the violations he had observed. (T. at 5).

{¶6} Sgt. Goodnite stated that upon making contact with Appellant, he observed the odor of alcohol. (T. at 6). He stated that he also observed that Appellant's eyes were bloodshot and glassy. *Id.* Appellant informed Sgt. Goodnite that he was coming from a place that served alcohol, although Sgt. Goodnite could not recall the name of the establishment at the suppression hearing. (T. at 28).

{¶7} Based on his observations to this point, Sergeant Goodnite asked Appellant to perform standardized field sobriety tests. (T. at 7). The first test Sgt. Goodnite

administered was the Horizontal Gaze Nystagmus Test. (T. at 7, 9). Sgt. Goodnite observed six out of six clues that would indicate nystagmus. (T. at 9). Sergeant Goodnite testified that this meant there was a seventy-seven percent chance that Appellant would test above a .10 for alcohol. (T. at 9).

{¶8}   Next, Sergeant Goodnite administered the walk-and-turn test. (T. at 9). During this test, Appellant failed to touch heel to toe on each step, failed to keep his hands at his side during the turn, turned to the right instead of the left, raised his arms for balance, and also moved his feet during the instruction phase. (T. at 10).

{¶9}   The last test Sgt. Goodnite administered was the one-leg stand test. (T. at 10). During this test, Appellant put his foot down nine (9) times in the thirty seconds he was asked to have it raised, and he raised his arms for balance. (T. at 12).

{¶10}  As a result of the above, Appellant was charged with one count of OVI, in violation of R.C. §4511.19(A)(1)(a) and R.C. §4511.19(A)(1)(d), and one count of Driving in Marked Lanes, in violation of R.C. §4511.33. Sgt. Goodnite testified that instead of charging Appellant for both minor misdemeanor violations, he only cited him for one. (T. at 18-19).

{¶11}  On February 12, 2015, Appellant filed a Motion to Suppress arguing there was no reasonable, articulable suspicion of criminal activity and/or lawful cause to request Appellant to exit his vehicle and perform field sobriety tests. Appellant also argued that Sgt. Goodnite lacked probable cause to arrest him.

{¶12}  On February 17, 2015, a hearing was held on Appellant's motion.

{¶13}  By Judgment Entry filed February 18, 2015, the trial court overruled Appellant's Motion.

{¶14} On March 3, 2015, Appellant came before the trial court and entered a change of plea to a no-contest plea to one count of OVI and the marked lanes violation. The trial court subsequently found Appellant guilty of both charges. On the OVI charge, the trial court sentenced Appellant to serve one hundred eighty (180) days in the Stark County Jail with all but three (3) days suspended on condition of Appellant's good behavior for two (2) years. Appellant was also sentenced to pay a fine of six hundred twenty-five dollars ($625) to which a two hundred fifty dollar ($250) credit would be given if Appellant completed the Driver's Intervention Program. Appellant's license was also suspended for one hundred eighty (180) days, effective from January 9, 2015. On the second count, Appellant was sentenced to pay court costs.

{¶15} On March 27, 2015, Appellant filed a Motion of Stay of Execution of Sentence with the trial court, which was denied on March 31, 2015.

{¶16} On April 3, 2015, a Motion of Stay of Execution of Sentence was filed with this Court.

{¶17} On April 27, 2015, this Court granted a stay of sentence as it pertained to the Driver's Intervention Program.

{¶18} Appellant now appeals, raising the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

{¶19} "I. THE TRIAL COURT'S FINDINGS OF FACT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BASED UPON THE TESTIMONY OF TROOPER GOODNIGHT.

{¶20} "II. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE TROOPER GOODNIGHT LACKED A

REASONABLE, ARTICULABLE SUSPICION TO REQUEST THE APPELLANT TO EXIT HIS VEHICLE TO PERFORM FIELD SOBRIETY TESTS IN VIOLATION OF THE APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES.

**{¶21}** "III. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE TROOPER GOODNIGHT LACKED PROBABLE CAUSE TO ARREST THE APPELLANT FOR OVI."

**I., II., III.**

**{¶22}** In each of his Assignments of Error, Appellant argues the trial court erroneously denied his motion to suppress. We disagree.

**{¶23}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. However, as the United States Supreme Court held in *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

**{¶24}** Initially, Appellant argues that the trial court's findings of fact are against the manifest weight of the evidence. Specifically, Appellant claims that Appellant did not commit a marked lanes violations as stated by the trial court in its judgment entry.

**{¶25}** As stated above, in reviewing this type of challenge, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *See Guysinger, supra.* The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. Thomas* (1982), 70 Ohio St.2d 79, syllabus. It is not an appellate court's function to substitute its judgment for that of the fact-finder. *State v. Jenks* (1981), 61 Ohio St.3d 259, 279, 574 N.E.2d 492. Since we are not fact finders, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction* (1978), 54 Ohio St.2d 279.

**{¶26}** The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibits the government from conducting unreasonable searches and seizures of persons or their property. *See Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.

Traffic Stop

**{¶27}** There are two standards applied to determine whether police have legitimately stopped a vehicle. *State v. Weinheimer,* Warren App. No. CA2003–04–044, 2004–Ohio–801, ¶8. First, police may make an investigatory stop of a vehicle when they have a "reasonable articulable suspicion" criminal activity has occurred or is occurring, and the officer seeks to confirm or refute this suspicion of criminal activity. *Id.*

**{¶28}** Second, police may stop a vehicle based on "probable cause" a traffic violation, even minor, has occurred or is occurring. *Dayton v. Erickson,* 76 Ohio St.3d 3, 11–12, 665 N.E.2d 1091, 1996–Ohio–431. Such is the case when an officer witnesses a traffic violation and then stops the motorist for this traffic violation.

**{¶29}** Appellant argues that he did not commit a marked lanes violation because his turn signal blinker was on when he made the right-hand turn onto Walnut and remained on when he moved from the right lane, over the dash line into the middle lane and then back into the right lane.

**{¶30}** In the instant case, we find Sgt. Goodnite had legal authority to stop Appellant's vehicle.

**{¶31}** R.C. §4511.33, Ohio's "marked lane" statute, mandates in pertinent part as follows:

**{¶32}** "(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic * * *, the following rules apply: (1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety. * * * ."

**{¶33}** Sgt. Goodnite testified that Appellant's vehicle made a continuous motion turning and then changing from lane to lane. This Court has also reviewed the video tape, which captured Appellant's vehicle making the right-hand turn onto Walnut Avenue. Upon review, we find that Appellant could not have "first ascertained that such movement [could] be made with safety." We therefore find that the trial court's finding that Appellant committed a marked lanes violation was not against the manifest weight of the evidence.

**{¶34}** Next, appellant argues that Sgt. Goodnite lacked reasonable, articulable suspicion to request that he perform field sobriety tests. Appellant also contends there was not probable cause to arrest him

Field Sobriety Tests

**{¶35}** "Requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment. Courts have generally held that the intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion that the driver is under the influence of alcohol in order to conduct a field sobriety test." *State v. Bright,* 5th Dist. Guernsey No. 2009–CA–28, 2010–Ohio–1111, ¶17, citing *State v. Knox,* 2nd Dist. Greene No. 2005–CA–74, 2006–Ohio–3039.

**{¶36}** In reviewing this issue, we apply a "totality of the circumstances" approach. *See, e.g., City of Fairfield v. Lucking,* Butler App. No. CA2002–12–303, 2004–Ohio–90, ¶ 8, citing *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044.

**{¶37}** In support of his position, Appellant cites *State v. Keserich*, 5th Dist. Ashland County, Case No. 2014-CA-011, 2014-Ohio-5120. In *Keserich*, this Court reversed the decision of the trial court overruling Keserich's motion to suppress.

**{¶38}** In *Keserich*, the defendant was stopped for not having a light illuminating his rear license plate. Upon stopping Keserich, the officer observed bloodshot and watery eyes, and he admitted to having consumed two alcoholic beverages. Based on these facts, the officer requested that Keserich perform field sobriety tests. This Court, under the facts in this case, found that defendant's bloodshot eyes could have been attributed to the fact that there were four or five other passengers in the car who were smoking. This Court found that this possible explanation for the bloodshot eyes, together with the stop being based solely on an equipment violation and the lack of any observation of erratic driving, was not enough to form a basis to request performance of the field sobriety tests.

**{¶39}** We find this case to be distinguishable from *Keserich*, *supra*.

**{¶40}** In the instant case, as set forth in our recitation of facts, Sgt. Goodnite stopped Appellant for moving violations. He testified he observed Appellant make an improper turn as well as a marked lanes violation. Additionally, upon stopping Appellant, he observed that his eyes were bloodshot and glassy, and that there was an odor of alcohol coming from the vehicle. Sgt. Goodnite continued to detect the odor of alcohol once Appellant was outside of the vehicle. Further, Appellant admitted to having just left a drinking establishment. Additionally, it was 11:35 p.m. on a Friday evening.

**{¶41}** Upon review based on the above factors, we hold a reasonable basis existed for Sgt. Goodnite to ask Appellant to step out of his vehicle and proceed with field sobriety testing under the circumstances of this case.

Arrest

**{¶42}** We further find, based on the foregoing, that probable cause existed for the arrest.

**{¶43}** "The standard for determining whether the police have probable cause to arrest an individual for OVI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonable trustworthy source of facts and circumstances to cause a prudent person to believe that the suspect was driving under the influence." *State v. Swope,* 5th Dist. Fairfield No. 08 CA 50, 2009–Ohio–3849, ¶ 22.

**{¶44}** The issue is whether appellant's actions and Sgt. Goodnite's observations lead to probable cause to arrest. We note each case is determined individually from the facts and observations presented.

**{¶45}** Here, based on the totality of the circumstances, including Sgt. Goodnite's observations as set forth above and Appellant's poor performance on all of the field sobriety tests, we find that probable existed to arrest Appellant.

**{¶46}** We therefore hold the trial court did not err in denying the motion to suppress in this matter. Accordingly, Appellant's Assignments of Error are overruled.

**{¶47}** For the reasons stated in the foregoing opinion, the judgment of the Canton Municipal Court, Stark County, Ohio, is affirmed.

By: Wise, J.
Gwin, P. J., and
Delaney, J., concur.


JWW/d 1110