[Cite as *State v. Farley*, **2018-Ohio-1466.**]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| SCOTT FAREY | : | Case No. 2017CA00137 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Massillon Municipal
                                Court, Stark County, Ohio,
                                Case No. 2016CR0090

JUDGMENT:                       Affirmed

DATE OF JUDGMENT:               April 16, 2018

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

ANTHONY LAPENNA                           JEFFRY V. SERRA
Massillon Prosecutor's Office             The Ferruccio Law Firm
Two James Duncan Plaza                    301 Cleveland Avenue N.W.
Massillon, OH  44646                      Canton, OH  44702

*Wise, Earle, J.*

{¶ 1}   Defendant-appellant Scott Farey appeals the June 12, 2017 decision of the Massillon Municipal Court, Stark County, Ohio, overruling his motion to suppress. Plaintiff-appellee is the State of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On November 24, 2016 at 12:20 a.m., Lieutenant Haymaker of the Ohio State Highway Patrol was conducting routine patrol. He noticed appellant travelling at what appeared to be faster than the posted limit of 40 miles per hour. Lt. Haymaker followed appellant's vehicle and activated his ground radar. He clocked appellant traveling at 49 miles per hour. He further noted a slight sideways movement of the vehicle, but appellant never left his lane of travel. Lt. Haymaker activated his overhead lights and pulled appellant over.

{¶ 3}   Upon making contact with appellant, Lt. Haymaker noticed appellant smelled of alcohol, had glassy bloodshot eyes and a flushed face. Asked where he was coming from, appellant stated he had just picked his girlfriend up from a bar. Appellant denied he had been drinking. Appellant's speech and motions were slow as he gave Lt. Haymaker his license.

{¶ 4}   Lt. Haymaker preformed a preliminary horizontal gaze nystagmus (HGN) test while appellant was still seated in his vehicle and noted nystagmus present. He asked appellant if he was sure he had not been drinking, and appellant responded he had one drink while waiting for his girlfriend.

{¶ 5}   Based on his observations and appellant's changing alcohol consumption claim, Lt. Haymaker asked appellant to exit his vehicle for field sobriety testing. He first

placed appellant in his cruiser to preform complete HGN testing. Appellant exhibited six of six clues. Lt. Haymaker had appellant preform two other tests. He observed one of five clues on the one-legged stand and two of eight clues on walk and turn. He placed appellant under arrest and transported him to the Highway Patrol post. On the way, appellant stated he had two beers and had smoked marijuana around 8:00 p.m.

{¶ 6}  At the post, appellant submitted to a breath alcohol test, and at .073, was under the legal limit for alcohol.

{¶ 7}  Appellant also provided a urine sample which was sent to the Ohio State Highway Patrol laboratory for testing. Appellant's urine later tested positive for cocaine and marijuana.

{¶ 8}  Appellant was cited for speeding in violation of R.C. 4511.21(C) and operating a vehicle under the influence of alcohol or drugs (OVI) in violation of R.C. 4511.19(A)(1)(a).  He entered pleas of not guilty and filed a motion to suppress. Appellant argued Lt. Haymaker had no reasonable, articulable suspicion to ask him to exit his vehicle to preform sobriety tests, and no probable cause to arrest him for OVI.

{¶ 9}  On May 18, 2017, a hearing was held on the matter. The state presented evidence from Lt. Haymaker as well as Edward Yingling of the Ohio State Highway Patrol's crime lab.

{¶ 10} Yingling testified appellant's urine contained prohibited amounts of both marijuana and cocaine. Under R.C. 4511.19(A)(1)(a), the per se limit for marijuana metabolite levels in urine is 35 nanograms per milliliter. Appellant's urine contained 114 nanograms per milliliter.

{¶ 11} As for cocaine, the per se limit is 150 nanograms per milliliter. Yingling testified appellant's urine contained 646 nanograms per milliliter. Appellant's urine also contained benzoylecgonine, a metabolite of cocaine. The per se cocaine metabolite level is 150 nanograms per milliliter. Yingling found that appellant's urine contained 1700 nanograms per milliliter.

{¶ 12} After hearing the evidence, the trial court found on the record:

* * * I think the stop was fine. I think there was speed. I saw [appellant] pulling away and so I think there was a reasonable suspicion for the stop um regardless of any lane violation that I didn't see or movement that I didn't see. When he got [to appellant's vehicle] he noticed obviously a smell of an odor of alcohol, defendant having denied drinking at all, but noticed his eyes were glassy, flushed face um later the defendant admitted to one drink, then two drinks um his speech sounded really slow to me um he had a hard time or took time finding his operator's license. I thought there was a reasonable suspicion to remove him from the vehicle. The HGN * * *, he found six out of six clues. The walk and turn test and the one-leg stand test um he did them about as well as I think you could probably do them, so I think there may have … there was an initial um fall, not fall, but movement of his feet on the walk and turn test, but then he performed the test, I thought, perfectly. And yeah the turn wasn't exactly right, but he did a quicker turn than he's supposed to do and he kept his balance through it all, so I thought he did that well * * * .I thought he did well on the one-leg stand. I don't think that

gave it probable cause. I think probable cause was found because of the initial reasons for getting him out of the car um the smell of alcohol, the not telling the truth about the drinking and that the HGN um six out of six clues and it just didn't add up with the flush face and the slow speed, so I thought he was right to take him and test him.

{¶ 13} On June 12, 2017, the trial court issued its judgment finding reasonable articulable suspicion for the stop, adequate indicia of impairment to continue the investigation, and from the totality of the circumstances, probable cause to arrest.

{¶ 14} Appellant entered a plea of no contest. The trial court found appellant guilty and convicted him. Appellant was then sentenced to 180 days in the Stark County Jail with 110 days suspended. For the balance, appellant was ordered to serve 10 days in the Stark County Jail and 60 days of electronically monitored house arrest. Appellant's operator's license was suspended for three years and assessed 6 points. He was ordered to obtain a drug and alcohol assessment and follow all treatment recommendations. Finally, appellant was ordered to pay a fine and court costs.

{¶ 15} With the exception of the operator's license suspension, appellant's sentence was stayed pending this appeal. Appellant raises two assignments of error:

I

{¶ 16} "THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE LIEUTENANT HAYMAKER LACKED A REASONABLE, ARTICULABLE SUSPICION THAT THE APPELLANT WAS DRIVING UNDER THE INFLUENCE OF ALCOHOL AND/OR DRUGS TO REQUEST THE

APPELLANT TO EXIT HIS VEHICLE TO PERFORM FIELD SOBRIETY TESTS IN VIOLATION OF THE APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES."

II

{¶ 17} "THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE ARRESTING OFFICER LACKED PROBABLE CAUSE TO ARREST THE APPELLANT FOR OVI."

{¶ 18} First, as stated by the Supreme Court of Ohio in *State v. Leak,* 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 19} As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 94 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

REASONABLE SUSPICION FOR FIELD SOBRIETY TESTING

{¶ 20} In his first assignment of error, appellant claims the trial court erred in overruling his motion to suppress because Lt. Haymaker lacked reasonable, articulable suspicion that appellant was impaired, and therefore could not further detain him for field sobriety testing. We disagree.

{¶ 21} In reviewing whether such testing was proper, we apply a "totality of the circumstances" approach. See, e.g., *State v. Locker*, 5th Dist. Stark App. No. 2015CA00050, 2015-Ohio-4953, ¶ 36, citing *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

{¶ 22} "Requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment. Courts have generally held that the intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion that the driver is under the influence of alcohol in order to conduct a field sobriety test." *State v. Bright*, 5th Dist. Guernsey No.2009-CA-28, 2010-Ohio-1111, ¶ 17, citing *State v. Knox*, 2nd Dist. Greene No.2005-CA-74, 2006-Ohio-3039.

{¶ 23} An officer may not request a motorist to perform field sobriety tests unless the request is independently justified by reasonable suspicion based upon articulable facts that the motorist is intoxicated. *State v. Evans*, 127 Ohio App.3d 56, 62, 711 N.E.2d 761 (1998), citing *State v. Yemma*, 11th Dist. Portage App. No. 95-P-0156, 1996 WL

495076 (Aug. 9, 1996). "Reasonable suspicion is "* * * something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." *State v. Shepherd*, 122 Ohio App.3d 358, 364, 701 N.E.2d 778 (1997). "A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *Village of Kirtland Hills v. Strogin*, 6th Dist. Lake App. No.2005-L-073, 2006-Ohio-1450, ¶ 13, citing, *Village of Waite Hill v. Popovich*, 6th Dist. Lake App. No.2001-L-227, 2003-Ohio-1587, ¶ 14.

{¶ 24} "Where a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists." *State v. Strope*, 5th Dist. Fairfield No. 08 CA 50, 2009-Ohio-3849 ¶ 19.

{¶ 25} Appellant cites to this court's decision in *State v. Hall*, 5th Dist. Stark No. 2015CA00213, 2016-Ohio-5787 in support of his argument that Lt. Haymaker lacked reasonable suspicion to conduct field sobriety tests. In *Hall*, we concluded that red, watery, bloodshot eyes and an odor of alcohol, without additional indicia of intoxication, did not give the officer reasonable suspicion the driver was under the influence when the stop was for a single marked lanes violation made during a left turn, without speeding or additional swerving. In this case, however, appellant was stopped for speeding at 12:20 a.m., had an odor of alcohol, slow speech, lethargic movements as he retrieved his license for the trooper, glassy, bloodshot eyes, and a flushed face. Appellant stated he had just picked his girlfriend up from a bar and initially denied drinking, but then stated he

had one beer while he was at the bar. T. 13-15. We therefore find the evidence in this matter differs from that in *Hall*.

{¶ 26} Appellant further notes that there was no testimony presented as to the intensity of the odor of alcohol. Odor of alcohol, however, is but one consideration in an officer's decision to administer field sobriety tests. 4511.19(A)(1)(a) prohibits driving under the influence both alcohol and drugs. As was borne out in this matter, a motorist may display signs of intoxication from prohibited levels of substances other than alcohol.

{¶ 27} In *State v. Ciminello*, 5th Dist. Ashland No. 17-COA-030, 2018-Ohio-467, we were presented with a nearly factually identical scenario. In that matter appellant was stopped for travelling between 5 and 11 miles over the speed limit at 2:09 a.m. Appellant had a moderate odor of alcohol, glassy red eyes and stated she was coming from picking up her friend at a drinking establishment. She initially denied drinking herself, then admitted to consuming one beer. The trooper then asked appellant to preform field sobriety testing. On appeal, appellant argued the officer lacked reasonable, articulable suspicion to administer field sobriety tests. We found, however, based on the totality of the circumstances, the trooper "relied on specific articulable facts giving rise to a reasonable suspicion appellant was driving under the influence; justifying an extension of the initial detention for the performance of field sobriety testing." *Ciminello* ¶ 25.

{¶ 28} We reach the same conclusion here. Lt. Haymaker also relied on specific articulable facts to justify the administration of field sobriety tests. Appellant's first of assignment of error is therefore is not well taken.

PROBABLE CAUSE TO ARREST

{¶ 29} In his second assignment, appellant argues trial court erred in finding that Lt. Haymaker had probable cause to arrest. We disagree.

{¶ 30} A police officer has probable cause for an arrest if the facts and circumstances within his knowledge are sufficient to cause a reasonably prudent person to believe that the defendant has committed the offense. *State v. Cummings*, 5th Dist.No. 2005-CA-00295, 2006-Ohio-2431, ¶ 15, citing *State v. Heston*, 29 Ohio St.2d 152, 280 N.E.2d 376 (1972). In making this determination, the trial court must examine the totality of facts and circumstances surrounding the arrest. See *State v. Miller*, 117 Ohio App.3d 750, 761, 691 N.E.2d 703 (11th Dist.1997); *State v. Brandenburg*, 41 Ohio App.3d 109, 111, 534 N.E.2d 906 (2nd Dist.1987).

{¶ 31} Appellant cites the trial court's findings on his good performance on two of the field sobriety tests. As noted above, upon review of the video tape of the incident, the trial court found that appellant did exceptionally well on the one leg stand and the walk and turn tests. While these are factors to be considered in appellant's favor they do not constitute the entire calculus in the totality of the circumstances test. Probable cause does not necessarily have to be based, in whole or in part, upon a suspect's good or poor performance on one or more field sobriety tests. Poor performance on one test and adequate performance on others may establish probable cause to arrest. *State v. Elam*, 5th Dist. Licking App. No. 13-CA-89, 2014-Ohio-1666 ¶ 12-14. Or, as we noted in *State v. Tipple*, 5th Dist. Fairfield No. 16CA33, 2017-Ohio-2774 ¶ 19:

The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered. *State v. Homan*, 89 Ohio St.3d 421, 732 N.E.2d 952 (2000), superseded by statute on other grounds as stated in *State v. Boczar*, 113 Ohio St.3d 148, 863 N.E.2d 155, 2007-Ohio-1251. In *Homan*, the facts which supported a finding of probable cause to arrest for driving under the influence were: red and glassy eyes, breath which smelled of alcohol, erratic driving and an admission that the suspect had consumed alcohol.

{¶ 32} Appellant here exhibited six of six clues on the HGN test. The HGN test is a reliable test for determining if a person in under the influence. *State v. Bresson*, 51 Ohio St.3d 123, 129, 554 N.E.2d 1330. Failure of an HGN test, combined with an odor of alcohol and an admission to consuming alcohol, even without conducting other field sobriety tests, had been found to constitute probable cause to arrest. *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 610, 645 N.E.2d 802.

{¶ 33} Appellant also argues the video in this matter shows no erratic driving or weaving, and that there was no testimony from Lt. Haymaker that speeding was indicative of driving under the influence. In *State v. Carter*, 5th Dist. No. 2013CA00036, 2013-Ohio-5153, ¶ 14, we found that speeding was an indication of erratic driving. However, in *Carter* the defendant was traveling 56 mph in a 35 mph zone on a snowy road where the officer testified the speed was unreasonable for the conditions. *Id.* We are not prepared to say that every speed violation is erratic driving. We have reviewed the testimony and the video in this case we do not find erratic driving here.

{¶ 34} Additionally, it was not necessary for Lt. Haymaker to observe poor driving performance in order to place appellant under arrest for driving under the influence when all the facts and circumstances lead to the conclusion that appellant was impaired. *State v. Harrop*, 5th Dist. No. CT2000-0026, unreported, 2001 WL 815538, (July 2, 2001), *2.

{¶ 35} Lt. Haymaker testified that upon approaching the vehicle he observed five indicators of intoxication. He smelled an odor of alcohol about the vehicle, appellant's speech was slow, his motions while looking for his operator's license were lethargic, his eyes were glassy and bloodshot, and his face was flushed. T. 12-13. Appellant initially said he had not had any alcohol to drink, but when asked a second time he admitted that he recently had one drink. T. 13-14. Lt. Haymaker testified that appellant performed poorly on the HGN exhibiting six clues, two clues on the walk and turn and one clue on the one leg stand. T. 19-23. After the field sobriety test were conducted, Lt. Haymaker is heard on the video tape telling the appellant that, "you reek of alcohol" and emphasized that, "the clues I'm looking for in your eyes are very very distinct."

{¶ 36} While this matter represents a close call, we nonetheless find the totality of these observations adequate to establish probable cause to arrest appellant for operating his vehicle under the influence of alcohol or drugs.

{¶ 37} The judgment of the Massillon Municipal court is affirmed.

By Wise, Earle, J.

Wise, John, P.J. and

Baldwin, J. concur.

EEW/rw037