[Cite as *State v. Macklin*, 2018-Ohio-2975.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 17-CA-39 |
| | : | |
| COREY K. MACKLIN | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:         Appeal from the Fairfield County
                                 Municipal Court, Case No. TRC 17
                                 04125


JUDGMENT:                        REVERSED AND REMANDED


DATE OF JUDGMENT ENTRY:          July 25, 2018


APPEARANCES:

For Plaintiff-Appellant:                 For Defendant-Appellee:

MITCHELL R. HARDEN                       RICHARD A.L. PIATT
LANCASTER LAW DEPARTMENT                 713 South Front St.
136 W. Main St.                          Columbus, OH 43206
Lancaster, OH 43130

*Delaney, J.*

{¶1}   Appellant state of Ohio appeals from the August 30, 2017 Entry of the Fairfield County Municipal Court sustaining the motion to suppress of appellee Corey K. Macklin.

## FACTS AND PROCEDURAL HISTORY

{¶1}   The following facts are adduced from the record of the suppression hearing on July 28, 2017.  Prior to the suppression hearing, the parties stipulated the issues to be heard were "simply reasonable suspicion and probable cause to arrest."  T. 5.

{¶2}   This case arose on April 3, 2017, around 4:10 a.m., when Sgt. Jason Bontrager of the Pickerington Police Department was on routine patrol on State Route 256 at 695 Hill Road North in Fairfield County.  Bontrager observed a car in a parking-lot driveway with a female standing nearby.  Bontrager observed that the vehicle had heavy front-end damage and stopped to ask the driver, identified as appellee, whether she had been in an accident.  Appellee replied that she thought she had a broken axle.

{¶3}   Bontrager believed the damage to be worse than a broken axle and asked appellee what caused the vehicle's airbags to deploy.  Appellee responded that she thought she might have fallen asleep at the wheel.  Appellee was wearing slippers and what Bontrager described as "bed clothes."  She said she had been working at Tim Hortons and hadn't had any sleep, and she may have fallen asleep at the wheel.

{¶4}   Bontrager observed tire marks going off the roadway "to the side over by a creek."  Bontrager realized he was investigating a crash and not merely a disabled vehicle.  He found appellee's attitude to be "odd" because she was "nonchalant," "not

really caring," and "laissez-faire" despite the fact that her vehicle apparently drove through a creek.

{¶5}   Bontrager did not smell any odor of alcohol.  He noted appellee's eyes were "droopy" and her pupils were dilated; at times she slurred her speech.  He asked where appellee was coming from and she said she had worked at Tim Hortons and was tired because she hadn't slept.  Bontrager asked if appellee had smoked marijuana recently but she said she had not "for a day or so."  T. 14.  Appellee denied having any head injuries and refused medical attention.

{¶6}   After describing the circumstances above, appellant attempted to question Bontrager about the administration of standardized field sobriety tests (SFSTs).  We note portions of the record are unintelligible and therefore not transcribed.  Bontrager testified he was originally trained on the 2013 version of the NHTSA manual but not, apparently, the version of the manual the prosecutor tried to question him about.  Appellee objected and the trial court ruled Bontrager could not testify as an expert about the SFSTs.  Instead, he could testify to his general "observations."  Bontrager then testified appellee swayed back and forth and couldn't keep her balance.

{¶7}   Bontrager arrested appellee based upon the evidence of her dilated pupils, droopy eyes, slurred speech, impaired movement, and "carefree attitude" about a serious crash, combined with the fact that the vehicle had gone off the roadway.

{¶8}   After appellee was arrested, a marijuana pipe was found in her pocket and a vehicle inventory turned up baggies containing "vegetation."

{¶9}   On August 30, 2017, via Entry, the trial court sustained appellee's motion to suppress, finding in pertinent part:

* * * *.

An accident at approximately 4:00 a.m. does not give rise to an OVI investigation. There must be other factors that indicate that the driver was impaired. In the present case, there is no smell of alcohol, there is no indication of drugs, there is no admission of drugs, there is simply an accident wherein the axle was broken, the air bags deployed and the windshield was cracked. Without some other indication of there being impairment at the time of driving, the investigation cannot be expanded. Wherefore, the Court finds that there was no reasonable suspicion to expand the stop to an OVI investigation and, therefore, sustains the Defendant's Motion to Suppress any evidence gathered thereafter regarding the OVI investigation.

* * * *.

{¶10} Appellant now appeals from the trial court's decision granting appellee's motion to suppress.[1]

{¶11} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶12} "THE TRIAL COURT ERRED IN FINDING THAT THE OFFICER LACKED REASONABLE, ARTICULABLE SUSPICION TO CONDUCT FIELD SOBRIETY TESTS, AND HENCE ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS."

---

[1] Appellant filed a Crim.R.12(K) certification on September 1, 2017.

**ANALYSIS**

{¶13} In the sole assignment of error, appellant argues the trial court incorrectly decided Bontrager did not have reasonable articulable suspicion to expand the crash investigation by asking appellee to submit to field sobriety testing. We agree.

*Standard of Review*

{¶14} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶15} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to

apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, *Williams*, supra.

{¶16} Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

{¶17} In the instant case, appellant argues the trial court incorrectly decided the ultimate issue: whether Bontrager had reasonable suspicion to ask appellee to perform field sobriety tests. Our standard of review is thus de novo. *State v. Reed*, 5th Dist. No. 16CA50, 2017-Ohio-2644, 90 N.E.3d 222, ¶ 27, citing *State v. Levengood*, 2016-Ohio-1340, 61 N.E.3d 766, ¶ 17. The trial court found that the totality of the circumstances did not support Bontrager's expansion of the encounter into an OVI investigation. Our review of the record includes the transcript of the suppression hearing, at which Bontrager was the only witness. Exhibits admitted at the suppression hearing include the uniform traffic citation and the BMV 2255 form, but we are without the benefit of videotape evidence of any portion of the investigation and arrest.

{¶18} We are charged with independently determining, without deference to the trial court's conclusion, whether the facts before us on the record meet the appropriate legal standard. *Levengood,* supra, 2016-Ohio-1340 at ¶ 29, citing *State v. Curry,* 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994).

*Findings of Fact Supported by Record*

{¶19} We are bound to accept factual determinations of the trial court so long as they are supported by competent and credible evidence, and the evaluation of evidence and the credibility of the witnesses are issues for the trier of fact in the hearing on the motion to suppress. *State v. Myer*, 5th Dist. Perry No. 16–CA–00007, 2017–Ohio–1046, ¶ 15, citing *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972 (1992). Our role in reviewing a trial court's ruling on a motion to suppress is not to reevaluate the evidence or the credibility of the witnesses, but to determine whether the trial court's application of the law to the facts, as the trial court found them to be, is appropriate. *Myer*, supra, at ¶ 16, citing *Mills*, 62 Ohio St.3d at 366; *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141 (4th Dist. 1993).

{¶20} The trial court's findings of fact contained in the judgment entry sustaining the motion to suppress are supported by competent, credible evidence in the record, but we disagree with the application of the law to those facts.

*Appellant Established Reasonable Articulable Suspicion*

{¶21} The instant case does not arise from a traffic "stop" because appellee's vehicle was already crashed and disabled when Bontrager came upon it. His crash investigation, though, expanded into an investigation of a possible OVI upon his contact with appellee.

{¶22} A request made of a validly-detained motorist to perform field sobriety tests is generally outside the scope of the original stop, and must be separately justified by other specific and articulable facts showing a reasonable basis for the request. *State v. Albaugh,* 5th Dist. Tuscarawas No. 2014 AP 11 0049, 2015-Ohio-3536, 2015 WL

5096900, ¶ 18, quoting *State v. Anez*, 108 Ohio Misc.2d 18, 26–27, 738 N.E.2d 491 (2000). Although requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment, courts have generally held that the intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion that the driver is under the influence of alcohol (or another drug) in order to conduct a field sobriety test. *See State v. Bright,* 5th Dist. Guernsey No. 2009–CA–28, 2010-Ohio-1111, ¶ 17, citing *State v. Knox,* 2nd Dist. Greene No. 2005–CA–74, 2006-Ohio-3039, 2006 WL 1661628. Under a "totality of the circumstances" approach, we look at the entirety of the events leading to the officer's decision to conduct field sobriety tests. See, e.g., *State v. Locker*, 5th Dist. Stark App. No. 2015CA00050, 2015-Ohio-4953, 2015 WL 7738365, ¶ 36, citing *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

{¶23} "Reasonable suspicion is "* * * something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." *State v. Shepherd*, 122 Ohio App.3d 358, 364, 701 N.E.2d 778 (2nd Dist.1997). "A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Farey*, 5th Dist. Stark No. 2017CA00137, 2018-Ohio-1466, ¶ 23, citing *Village of Kirtland Hills v. Strogin*, 6th Dist. Lake App. No.2005–L–073, 2006-Ohio-1450, 2006 WL 766541, ¶ 13 (internal citation omitted).

{¶24} In analyzing similar cases, we have accepted the template set forth by the Supreme Court of Ohio in *State v. Batchili,* 113 Ohio St.3d 403, 2007–Ohio–2204, 865

N.E.2d 1282, paragraph two of the syllabus: "The 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, **and a court may not evaluate in isolation each articulated reason for the stop**" (emphasis added). The intrusion on the drivers' liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion the driver is under the influence of alcohol in order to conduct a field sobriety test. *State v. Knox*, Greene App. No. 2005–CA–74, 2006–Ohio–3039. See also, *State v. Bright*, 5th Dist. Guernsey App. No. 2009–CA–28, 2010–Ohio–1111.

{¶25} Appellant argues Bontrager had reasonable and articulable suspicion of further criminal activity in addition to the fact of the crash that would justified an OVI investigation and administration of field sobriety tests.

{¶26} Appellant highlights the totality of the circumstances Bontrager testified to as a "particularized and objective basis" to suspect appellee was impaired, including: the early morning hours (4:10 a.m.); the disabled condition of the vehicle and evidence it had gone entirely off the road and through a creek; appellee's "droopy" eyes and dilated pupils; her slurred speech; her unusually nonchalant response to the severity of the crash; her behavior in walking away from the officer and inability to focus on his questions; and swaying back and forth, unable to keep her balance.[2]

{¶27} Appellee cites to this court's decision in *State v. Hall*, 5th Dist. Stark No. 2015 CA 00213, 2016-Ohio-5787, 70 N.E.3d 1154, in which we found the officer had no reasonable basis to ask a defendant to perform field sobriety testing ["post-midnight"

---

[2] Appellant also cites appellee's admission to using marijuana "within the last day or so," but it is unclear to us from the record whether this statement was made prior to or after arrest.  T. 14, 38, 56.

traffic stop for single marked-lanes violation, odors of alcoholic beverage and marijuana emanating from vehicle interior, "red, watery, bloodshot eyes," but no other indicia of intoxication]. We find the facts of the case sub judice to be distinguishable. *Farey*, supra, 5th Dist. Stark No. 2017CA00137, 2018-Ohio-1466, ¶ 25. In the instant case, we find appellee's odd behavior, slurred speech, dilated pupils, and the manner and severity of the crash are potentially indicia of intoxication or impairment by some other drug.

{¶28} The trial court and appellee stress the absence of any odor of an alcoholic beverage or of marijuana, but this fact is not dispositive in evaluating the officer's reasonable suspicion. First, we are instructed not to view any single factor in isolation. *Batchili*, supra, 113 Ohio St.3d 403 at paragraph two of the syllabus. Second, as we noted in *Farey,* "[o]dor of alcohol * * * * is but one consideration in an officer's decision to administer field sobriety tests. 4511.19(A)(1)(a) prohibits driving under the influence both alcohol and drugs. As was borne out in this matter, a motorist may display signs of intoxication from prohibited levels of substances other than alcohol." *Id.* In the instant case, Bontrager testified that he didn't suspect alcohol intoxication at any point in the investigation. T. 49-50.

{¶29} Appellee also cites our decision in *State v. Keserich*, in which we found no reasonable, articulable suspicion when the defendant was pulled over for an equipment violation, his eyes were glassy and bloodshot, and he admitted to drinking. 5th Dist. Ashland No. 14–COA–011, 2014–Ohio–5120. That case is similar to this one in that the officer did not detect an odor of an alcoholic beverage, but it is distinguishable because of the severity and manner of the crash in the case sub judice. In *Keserich,* we stated it was "of utmost significance to our decision" the fact that "the arresting officer did not

observe any moving violation, let alone a de minimis one, regarding appellant's operation

of his vehicle," as "the stop was based solely upon an equipment violation." *Id.*

{¶30} In the instant case, Bontrager testified to significant evidence of erratic

driving: the vehicle was completely disabled, the air bags had deployed, and tracks

indicated the vehicle had traveled through a creek bed.  He described the crash as

"serious," one which could have killed appellee or someone else.  Appellee said she

wasn't injured and did not complain of head injuries, but her behavior was "bizarre" during

the encounter: she seemed untroubled by the severity of the crash and was unable to

remain still to respond to Bontrager's questions.  Her explanation that she fell asleep

behind the wheel was plausible, but further statements that she came from work at Tim

Hortons is inconsistent with Bontrager's observations that she was wearing "bed clothes"

and slippers.  Appellee's eyelids were droopy, her pupils were dilated, and the crash

occurred in the early-morning hours.  While all of these elements could indicate a driver

fell asleep behind the wheel, taken together, they also establish reasonable articulable

suspicion for Bontrager to ask appellee to submit to field sobriety testing.

{¶31} In short, appellant established reasonable articulable suspicion despite the

absence of some evidence typically found in OVI cases, such as an odor of an alcoholic

beverage or marijuana.  But as we noted in *Cook*, supra, 2007-Ohio-707, at ¶ 19, [odor

of burnt marijuana, no erratic driving, no slurred speech or bloodshot eyes], the driver

"need not display every possible indication of being under the influence in order for

reasonable, articulable suspicion grounds to exist for [an officer] to proceed with the field

sobriety testing." See also, *State v. Edwards*, 5th Dist. Tuscarawas No. 2003 AP 09 077,

2003-Ohio-870, at ¶ 11-12.

{¶32} In another case, we relied strongly upon video evidence of interaction between a driver and an officer; the defendant revealed no apparent signs of impairment, but the investigating officer reported other factors that led him to investigate further, including the odor of marijuana. Although we ultimately found the officer did not have *probable cause* to arrest the defendant, we noted the factors cited by the officer did provide *reasonable and articulable suspicion* for him to investigate further, including administration of field sobriety tests. *State v. Kopp*, 5th Dist. No. 16-CA-96, 2017-Ohio-4428, 93 N.E.3d 199, ¶ 22 [rear license plate out, odor of marijuana, no visible signs of impairment].

{¶33} The trial court concluded that an accident at 4:00 a.m. does not give rise to an OVI investigation. When evaluating the question of reasonable articulable suspicion to further investigate, though, the cause and manner of the accident is highly relevant. As one portion of the totality of the circumstances, "viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold," the crash combined with appellee's demeanor, pursuant to the facts testified to by Bontrager, gave him reasonable articulable suspicion to ask her to submit to field sobriety tests. Whether appellant's evidence establishes probable cause for an OVI arrest, much less proof beyond a reasonable doubt, are not questions addressed here. It is well-established that an officer's reasonable articulable suspicion does not require proof beyond a reasonable doubt that the defendant's conduct has satisfied the elements of the offense. *State v. Hall*, 5th Dist. No. 2015 CA 00213, 2016-Ohio-5787, 70 N.E.3d 1154, ¶ 17, citing *State v. Willis,* 5th Dist. Licking No. 14 CA 103, 2015-Ohio-3739, 2015 WL 5334283, ¶ 25, internal citation omitted.

{¶34} The issue presented by this appeal is a narrow one, and we rely upon evidence from a truncated suppression hearing to reach our conclusion, solely on the grounds of Bontrager's reasonable articulable suspicion to investigate further. Whether the evidence supports probable cause for an OVI arrest is a separate issue which was not reached in the suppression hearing before the trial court.

{¶35} Based on the totality of the circumstances, we find Bontrager "relied on specific articulable facts giving rise to a reasonable suspicion [appellee] was driving under the influence; justifying an extension of the initial detention for the performance of field sobriety testing*." State v. Ciminello*, 5th Dist. Ashland No. 17-COA-030, 2018-Ohio-467, ¶ 25 [speed between 5 and 11 miles over limit at 2:09 a.m., moderate odor of alcohol, glassy red eyes, admission of coming from bar and having one beer].

{¶36} Appellant's sole assignment of error is sustained.

## CONCLUSION

{¶37} Appellant's sole assignment of error is sustained.  The August 30, 2017 Entry of the Fairfield County Municipal Court is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

By:  Delaney, J.,

Gwin, P.J. and

Wise, Earle, J., concur.