[Cite as *State v. Reed*, 2017-Ohio-2644.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 16CA50 |
| | : | |
| RASHAD S. REED | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Richland County Court
of Common Pleas, Case No. 2015 CR
0994 R


JUDGMENT:                       AFFIRMED


DATE OF JUDGMENT ENTRY:         May 1, 2017


APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

BAMBI COUCH-PAGE                        ROBERT GOLDBERGER
RICHLAND CO. PROSECUTOR                 10 West Newlon Place
DANIEL M. ROGERS                        Mansfield, OH 44902
38 S. Park St.
Mansfield, OH 44902

*Delaney, P.J.*

{¶1}   Appellant Rashad S. Reed appeals from the July 1, 2016 Sentencing Entry of the Richland County Court of Common Pleas.  Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2}   The following evidence is adduced from the record of the suppression hearing on March 18, 2016.  During the hearing, two different stories emerged about events in the parking lot of the American Legion on Harmon Street on November 25, 2015.

### Law Enforcement Testimony

*Detective Grimshaw*

{¶3}   Mansfield Police received multiple complaints about a distinctive vehicle involved in drug transactions: a white Dodge Charger with black pinstripes on the side. Detectives with METRICH, the narcotics-enforcement division, spotted this vehicle as they drove in an unmarked car and followed the Charger to the American Legion parking lot.  Detective Ryan Grimshaw testified they began following the vehicle around Harker Street and Bowman Street, near the Legion.  Appellant was the driver and had one passenger.

{¶4}   The Charger parked in the lot and a second car, a 2013 Chevy Malibu, pulled in and parked directly beside the Charger.  Detectives watched what they described as a hand-to-hand drug transaction between the Charger's passenger and a passenger in the Malibu.  The Charger's passenger walked over to the passenger window of the Malibu, exchanged something through the window, and immediately walked away. The passenger returned to the Charger and the car left the parking lot.

{¶5} Detectives followed the Charger around the block to a Papa John's Pizza drive-thru. The Charger then returned to the Legion lot. Detectives contacted a uniformed patrol officer in a marked cruiser to make contact with the occupants of the Charger.

{¶6} Grimshaw testified that as the uniformed officer arrived on the scene, the Charger's passenger was exiting the Legion bar. He testified the officer got the attention of the driver of the Charger, whom Grimshaw identified as appellant, but no guns were drawn.

*Ptl. Gladden*

{¶7} Ptl. Joseph Gladden was the uniformed officer who arrived in response to METRICH's request. A METRICH detective called Gladden and told him that while surveilling a location that was the subject of multiple complaints of drug activity, they observed a hand-to-hand drug transaction between the occupants of a white Dodge Charger with black pinstripes and another vehicle. Detectives asked Gladden to make contact with the occupants of the vehicle.

{¶8} Gladden approached the location and observed the Charger turning left from Harmon onto Bowman Street. He caught up to the car as it pulled into the Legion parking lot. The driver, appellant, got out of the car and Gladden verbally stopped him, although he did not recall his exact words. Gladden approached appellant, identified him, and learned from dispatch that appellant is a CCW holder. Gladden testified he always pats down CCW holders for officer safety in case they have a weapon.

{¶9} Before he touched appellant, however, Gladden observed the corner of a plastic baggie sticking out of appellant's right jeans pocket. Based upon his training and experience, Gladden believed the baggie to be consistent with packaging and

transportation of narcotics. Gladden patted appellant down and the baggie made a crinkling sound. Gladden felt the shape of the object and suspected it was a rock of crack cocaine.

{¶10} Gladden recovered the plastic baggie which did in fact contain a rock of crack cocaine. Appellant's right jeans pocket also contained a straw, and a large amount of cash was found in his left pocket.

**Defense Testimony**

{¶11} Two witnesses testified for the defense at the suppression hearing: Jessica Alexander and appellant.

{¶12} Jessica Alexander stated that on November 24, 2015, she was driving her champagne-colored 2013 Chevy Malibu and came to the Legion on her lunch hour from work to visit a friend named Delbert Evans, or "Chubby." Alexander arrived at the Legion, went inside the bar to use the restroom, and came back out to her car. Chubby came out to her car from inside the bar.

{¶13} While Alexander had been inside, appellant arrived in the white Charger. Alexander know appellant because they have mutual friends, including Chubby. When Alexander came out of the bar, she saw appellant sitting in his car, alone. About five minutes later, Terrence Hardin, known as "Peanut," came out of the bar. Peanut came over to Alexander's car and spoke to Chubby, who was sitting on the passenger side. Appellant remained in his own car. Peanut asked Alexander and Chubby if they would drive him down the street to Papa John's but Alexander refused. Peanut then asked if she would drive him to get cigarettes and she refused again because she had to return to work.

{¶14} According to Alexander, Peanut then walked over to appellant's car and asked appellant to drive him. Appellant agreed, Peanut got into the car, and they left. In the meantime, Chubby got out of Alexander's car to return inside the bar and she left.

{¶15} Appellant testified and said he was driving the white Charger that day although it belongs to someone else. He acknowledged he has driven the car on other occasions. On November 24, 2015, he said he pulled into the Legion parking lot, alone, and parked near a gold Malibu which was backed into a parking spot nearby. Two cars were between his car and the Malibu in the lot. Peanut was standing on the passenger side of the Malibu, talking to someone.

{¶16} Appellant rolled his window down and Peanut asked what he was doing. Appellant said he was about to enter the bar and get a drink. Peanut asked if he would take him to a drive-thru to get cigarettes and appellant agreed to do so. Appellant took Peanut to a drive-thru, returned to the Legion, and parked. Peanut went inside the bar. Appellant got out of the car and walked up to the door of the bar when a police officer got out of a cruiser, pulled his weapon, and said "You, stop." Appellant asked if the officer was talking to him and the officer told him to turn around and place his hands on his head. Appellant stated he had no choice but to obey the officer.

### Indictment, Suppression, and Plea

{¶17} Appellant was charged by indictment with one count of possession of cocaine in an amount equal to or exceeding five grams but less than ten grams, a felony of the fourth degree pursuant to R.C. 2925.11(A) and (C)(4)(b) [Count I] and one count of improper handling of a firearm in a motor vehicle, a misdemeanor of the first degree pursuant to R.C. 2923.16(E)(1) [Count II]. Count I is accompanied by a forfeiture

specification pursuant to R.C. 2941.1417, to wit, that appellant owned or possessed $1,292.00 and/or a "Glock 23 40 caliber semi auto Serial No. ZMD260" and that he used or intended to use the property in commission or facilitation of the offense.

{¶18} Appellant entered pleas of not guilty and filed a motion to suppress evidence arising from his arrest because he was "arrested by police at gunpoint without probable cause that he had committed any criminal act." Appellee responded with a motion in opposition.

{¶19} An evidentiary hearing was held on March 18, 2016, and the trial court overruled the motion to suppress by judgment entry dated March 21, 2016.

{¶20} On May 17, 2016, appellant changed his pleas of not guilty to ones of no contest and was referred for a pre-sentence investigation. By sentencing entry dated July 1, 2016, the trial court sentenced appellant to a term of 30 months of community control, fines, and costs. The property described in the forfeiture specification was forfeited to the state of Ohio.

{¶21} Appellant now appeals from the judgment entries of conviction and sentence, incorporating the trial court's decision overruling his motion to suppress.

{¶22} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶23} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."

**ANALYSIS**

{¶24} In his sole assignment of error, appellant argues the trial court should have sustained his motion to suppress. We disagree.

{¶25} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶26} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion,

whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶27} Appellant argues the trial court incorrectly decided the ultimate issue raised in his motion to suppress: whether his arrest by Gladden was supported by probable cause. Appellant argues the trial court incorrectly decided the ultimate issue raised by the motion to suppress and our standard of review is thus de novo. *State v. Levengood*, 5th Dist. Tuscarawas No. 2015AP090053, 2016-Ohio-1340, 61 N.E.3d 766, ¶ 17.

{¶28} Appellee acknowledges Gladden arrested appellant, i.e., that appellant was not free to leave once Gladden called out and stopped him in the parking lot. A warrantless arrest is valid if the arresting officer possessed probable cause to believe that the suspect committed an offense. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *State v. Otte,* 74 Ohio St.3d 555, 559, 1996–Ohio–108, 660 N.E.2d 711 (superseded on other grounds). The test for probable cause to justify an arrest is "whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck,* supra, 379 U.S. at 91. In determining whether probable cause to arrest existed, a reviewing court should examine the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 230–231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause is a lesser standard of proof than that required for a conviction, such as proof beyond a reasonable doubt or by a preponderance of the evidence. *State v. Young,* 146 Ohio App.3d 245, 254, 2001–Ohio–4284, 765 N.E.2d 938 (11th Dist.2001).

{¶29} We note Gladden could make a warrantless arrest of appellant based upon his observation of the baggie protruding from appellant's pocket which Gladden believed to contain narcotics. R.C. 2935.03(B)(1) states: When there is reasonable ground to believe that * * * a felony drug abuse offense as defined in section 2925.01 of the Revised Code has been committed within the limits of the political subdivision * * * in which the peace officer is appointed * * * a peace officer * * * may arrest and detain until a warrant can be obtained any person who the peace officer has reasonable cause to believe is guilty of the violation.

{¶30} Gladden was also entitled to rely upon the information relayed to him by the METRICH detectives regarding the hand-to-hand transaction they observed. Information supplied by officers or agencies engaged in a common investigation with an arresting officer may be used to establish probable cause for a warrantless arrest. *State v. Henderson*, 51 Ohio St.3d 54, 554 N.E.2d 104, 105 (1990), syllabus, citing *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Whitely v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); and *State v. Lewis*, 50 Ohio St. 179, 33 N.E. 405 (1893).

{¶31} Appellant contends Gladden was not justified in arresting him because Gladden only knew what the METRICH detectives told him and did not observe any criminal activity himself, and because it was appellant's passenger who was involved in the alleged hand-to-hand transaction. The existence of probable cause to arrest is not dependent upon the "ultimate judicial determination of guilt or innocence, which is resolved on a reasonable doubt standard," but whether the officer had "probable cause sufficient to authorize [the defendant's] arrest." *State v. McDaniel*, 5th Dist. Richland No.

14CA47, 2015-Ohio-1007, ¶ 42, citing *State v. Williams,* 2nd Dist. Montgomery No. 16306, unreported, 1997 WL 822672, *2 (Nov. 21, 1997).    We find Gladden's arrest of appellant was supported by probable cause.

{¶32}   Our review of the record is admittedly complicated by the fact that other people on the scene are not identified in the law-enforcement accounts of events, including the driver of the Malibu, the passenger in the Charger, and the Malibu passenger who took part in the hand-to-hand transaction.  The lack of identification makes it difficult to compare appellee's evidence to appellant's evidence.  We can speculate "Peanut" interacted with "Chubby" because even in Alexander's account, the two men conversed while Chubby was inside the car and Peanut leaned against the car, but this is not entirely clear from the testimony.

{¶33} The relevant focus, though, is appellant's activity and what Gladden knew of it.  Appellee contends appellant was searched incident to a lawful arrest, and that the arrest was premised upon probable cause.  Appellee's assertions are based upon Grimshaw's observations, experience, and training.  He observed what he believed to be a hand-to-hand drug transaction in an area where police received complaints of drug activity, carried out by the passenger in a vehicle reported to be involved in drug activity. The Charger entered the Legion lot, the transaction occurred, the Charger left the lot, and then returned.  Gladden, in turn, had the information from METRICH, plus his own observations of appellant, combined with his training and experience.  Gladden spotted the plastic bag sticking out of appellant's pants pocket and recognized it as likely containing a narcotic substance.

{¶34} The totality of the circumstances in this case equate to probable cause for appellant's arrest. "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). A police officer may draw inferences based on his own experience in deciding whether probable cause exists. *See, e.g., United States v. Ortiz,* 422 U.S. 891, 897, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975).

{¶35} Gladden's arrest of appellant was supported by probable cause. The trial court did not err in overruled the motion to suppress and appellant's sole assignment of error is overruled.

**CONCLUSION**

{¶36} Appellant's sole assignment of error is overruled and the judgment of the Richland County Court of Common Pleas is affirmed.

By:  Delaney, P.J.,

Wise, John, J. and

Wise, Earle, J., concur.

*Wise, Earle, J., dissents.*

{¶37}  I respectfully dissent from the majority's opinion.

{¶38}  Undercover detectives observed a suspicious white Dodge Charger with black pinstripes, ultimately determined to have been driven by appellant.  T. at 5-6.  The vehicle parked in the American Legion lot.  The detectives observed appellant's passenger exit the vehicle and approach a second vehicle which was parked in the same lot.  T. at 9.  The passenger made contact with a person in the second vehicle through the passenger side window.  *Id.*  The detectives described the contact as what appeared to be a hand-to-hand drug transaction.  T. at 8-9.  The passenger reentered the Charger and the Charger drove away.  T. at 9.

{¶39}  The detectives related what they had observed to Patrolman Gladden, a uniformed police officer driving a marked cruiser.  T. at 17-18, 21.  Patrolman Gladden, with direction from the undercover detectives, found the suspect vehicle.  He observed the Charger return to and park in the same American Legion lot.  T. at 18.  At that point, Patrolman Gladden activated his overhead emergency lights, pulled in behind the vehicle, and blocked its exit.  T. at 20, 23.  He stepped out of his cruiser and called out to appellant who was already standing outside of the Charger.  T. at 14, 22-23.  Based on testimony elicited from Patrolman Gladden during the suppression hearing, the state conceded that appellant was under arrest at that point.  T. at 24, 43; Appellee's Brief at 6-7.

{¶40}  After the conceded point of arrest, Patrolman Gladden made a closer approach to appellant.  He then observed a plastic baggie sticking out of appellant's pocket.  T. at 19, 24.  Patrolman Gladden searched appellant incident to the arrest and retrieved a rock of crack cocaine from his pocket, along with money and other contraband.

T. at 19, 21.  These observations occurred after the arrest and cannot form the basis of the probable cause determination for the arrest.[1]

{¶41}  The relevant inquiry as to probable cause for the arrest must be based on the circumstances and observations made by the undercover detectives of appellant's actions during the first time the Charger was in the American Legion parking lot. Patrolman Gladden had no additional information prior to making the arrest.

{¶42}  One of the undercover detectives at the scene, Detective Grimshaw, testified at the suppression hearing regarding what he observed the first time the Charger was at the American Legion.  He testified, "[w]e observed a vehicle that we had received complaints on possibly involved in drug trafficking," the aforementioned white Dodge Charger with black pinstripes.  T. at 5.  The source(s) and/or time frame(s) of the complaints were not specified.  The Charger pulled into and parked in the American Legion parking lot.  The passenger of the Charger exited the vehicle and walked to the passenger window of the second vehicle.  T. at 9.  Detective Grimshaw stated, "[i]t appeared they made a hand-to-hand drug transaction inside the vehicle."  *Id.*

{¶43}  Defense counsel asked Detective Grimshaw to further explain the hand-to-hand transaction (*Id*):

Q. Well, when you say that, tell me what you mean by that.

---

[1]The state initially argued in its March 17, 2016 response to the motion to suppress that the observation of the baggie sticking out of appellant's pocket and the items recovered in the "pat down" for officer safety occurred prior to the arrest and were part of the circumstances that contributed to the probable cause for the arrest.  However, after the testimony of Patrolman Gladden, the state conceded the arrest occurred prior to the sighting of the baggie and the collection of the contraband from appellant.

A. The passenger walked up.  You could seem them.  It appeared they exchanged something with their hands and immediately walked away.

Q. Did you see money?

A. No.  From our - - where we were sitting, we were too far to see that.

Q. Did you see anything packaged in your training that appeared to be drugs?

A. No, sir.

Q. Only the physical movements of the individuals?

A. That's correct.

Q. Was this other individual, not the [appellant], who was outside the car reaching in a passenger window or a driver's window?

A. Passenger window.

Q. Shortly thereafter, [appellant's] passenger gets back in the car and they go to the Papa John's.  Correct?

A.  Correct.

{¶44}  Later, on recross-examination, Detective Grimshaw and defense counsel had the following exchange (T. at 16):

Q. Since you don't want to get too close, it is certainly quite possible that whatever activity was taking place at the car window could have been legal.  Correct?

A. That's correct.

**{¶45}** Detective Grimshaw testified that after he witnessed the event he "had a marked patrol unit respond and contact the vehicle." T. at 5. The prosecutor asked why he requested a marked cruiser and Detective Grimshaw testified, "[w]e believed we just observed a drug transaction involving a white Dodge Charger. We wanted the marked police cruiser to find a reason to pull over the Dodge Charger." *Id.*

**{¶46}** Based upon the foregoing, I find the totality of the circumstances at this point was insufficient for a finding of probable cause to arrest appellant. I would grant the assignment of error.

_____
HON. EARLE E. WISE, JR.