[Cite as *State v. Smith* , 2018-Ohio-3436.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
| Plaintiff-Appellant | Hon. W. Scott Gwin, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 18 CA 00011 |
| ALBERT N. SMITH | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:          Criminal Appeal from the Court of Common
                                  Pleas, Case No.  17 CR 00665


JUDGMENT:                         Affirmed


DATE OF JUDGMENT ENTRY:           August 24, 2018


APPEARANCES:

For Plaintiff-Appellant                   For Defendant-Appellee

WILLIAM C. HAYES                          JOSHUA E. HALL
PROSECUTING ATTORNEY                      844 South Front Street
DANIEL J. BENOIT                          Columbus, Ohio  43206
ASSISTANT PROSECUTOR
20 South Second Street, Fourth Floor
Newark, Ohio  43055

*Wise, John, P. J.*

**{¶1}** Plaintiff-Appellant State of Ohio appeals the decision of Licking County Court of Common Pleas granting Defendant-Appellee Albert N. Smith's motion to suppress.

**STATEMENT OF THE FACTS AND CASE**

**{¶2}** On February 11, 2017, the City of Heath Fire Department (HFD) received a call about a potential house fire at 197 Quaker Road in Heath, Ohio. Firefighters arrived on the scene at approximately 12:15 p.m. (T. at 7 -8). Among some of the first responders to arrive, was Firefighter Douglas Brown. Brown is also an investigator and fire inspector. As fire inspector, Brown is responsible for investigating fires and their origins within the city of Heath. (T. at 7). When the firefighters first arrived, there was a light haze of smoke coming from the top of the roof and heavy smoke conditions inside of the home. (T. at 9). Based on his observations on the scene of the nature and color of the smoke, Brown anticipated that the fire was likely contained in one room or was located in the basement. (T. at 9-10). Eventually forced entry was made into the home by the fire department. There was heavy smoke as the firefighters entered the home, and it was determined that they were likely dealing with a basement fire. (T. at 10-12). The fire was still active inside the structure at this time. (T. at 11). Entry was made into the basement, and when water was introduced, firefighters noticed arcing. (T. at 14). The electricity would eventually be cut to the home, the fire was extinguished, and the ventilation of the home was started. (T. at 13-14).

**{¶3}** Once the fire was mostly knocked down and under control, Brown began his investigation into the cause of the fire. (T. at 15). Brown investigated the basement of

the home. As he was attempting to locate the fuse box, he noticed that a bookshelf that was in the comer had been moved and exposed a hidden room. (T. at 17 -18). This secret room contained bright green vegetation and a lot of electrical lines and surge protectors. (T. at 18). Brown stated that his focus was on the electrical issues in the room as opposed to the vegetation. (T. at 21). Brown believed that the origin of the fire was in the basement, and it appeared to be electrical in nature. (T. at 22). Brown was unable to pinpoint the point of origin, and because of this, he was concerned that there could be a secondary fire. (T. at 23-24). He stated that the cause of the fire did not appear to be arson, but rather appeared to be accidental. (T. at 24). The cause of the fire in the official report was listed as indeterminate. (T. at 24).

{¶4} At some point during the fire-suppression process, Appellee arrived on scene and met with firefighting personnel. (T. at 27). Appellee was kept outside the home and measures were taken by the firefighters to ensure that Appellee did not enter the residence. (T. at 27-28).

{¶5} Brown secured the home, and the Central Ohio Drug Enforcement Task Force (CODE) was contacted to investigate the apparent marijuana grow. Arson was not suspected and CODE was called in specifically to investigate the marijuana grow. (T. at. 36-37). Non-firefighting personnel were prohibited from entering the home until the firefighter in command made the call that the fire is fully extinguished and the residence is safe to enter. (T. at 29).

{¶6} Detective Alan Thomas, member of CODE, was contacted by HFD at 1:07 p.m. regarding the apparent marijuana grow operation located in the basement. (T. at 41). Det. Thomas arrived on scene approximately 30 minutes after the call. (T. at 42). Prior

to entering the residence, Det. Thomas was assured by HFD that the fire was fully extinguished, electricity had been cut, and it was safe for him to enter. (T. at 53). Det. Thomas could not see the grow operation from outside the home and had to enter the residence and go down the steps into the basement to locate the grow room. (T. at. 55). Upon locating the grow room, Det. Thomas observed marijuana plants, potting soil and equipment used for growing marijuana. Det. Thomas then got his camera, gloves and evidence collection supplies from his vehicle and began taking photographs of the house and secret room. (T. at 46-50, 55). Det. Thomas also collected marijuana plants, marijuana, processed marijuana and various marijuana paraphernalia. (T. at. 50).

{¶7} On July 27, 2017, as a result of the above investigation, Appellee Albert N. Smith was indicted for Illegal Cultivation of Marijuana, in violation of R.C. §2925.04(A)(C)(1)(5)(c), a felony of the fourth degree.

{¶8} On October 31, 2017, Appellee filed a Motion to Suppress with regard to the warrantless search of his residence.

{¶9} On January 19, 2018, a hearing was held on Appellee's motion.

{¶10} On January 26, 2018, Appellant State of Ohio filed a motion contra to Appellee's motion to suppress.

{¶11} By Judgment Entry filed February 6, 2018, the trial court issued a ruling granting the Appellee's motion to suppress and excluding the evidence of the marijuana grow located within Appellee's home. As the State would be unable to proceed without this evidence, a notice of appeal was filed on February 22, 2018, in order to bring this matter before this Court.

{¶12} Appellant now appeals, raising the following assignment of error on appeal:

## ASSIGNMENT OF ERROR

**{¶13}** "I. THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION TO SUPPRESS."

**I.**

**{¶14}** In its sole assignment of error, Appellant argues that the trial court erred in denying its motion to suppress. We disagree.

**{¶15}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726 (4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (8th Dist.1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (4th Dist.1993); *Guysinger.* As the United States Supreme Court held in

*Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶16} In the instant case, Appellant argues the trial court incorrectly decided the ultimate issue: whether the warrantless entry into the home by the CODE detective was based upon exigent circumstances. Our standard of review is therefore *de novo. State v. Reed*, 5th Dist. No. 16CA50, 2017-Ohio-2644, 90 N.E.3d 222, ¶ 27, citing *State v. Levengood*, 2016-Ohio-1340, 61 N.E.3d 766, ¶ 17.

{¶17} It is undisputed that law enforcement entered upon the property without a warrant. The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception to the warrant requirement applies. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The government may not intrude into areas where legitimate expectations of privacy exist. In determining whether the Fourth Amendment protects against a search, "the rule that has emerged * * * is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz,* 389 U.S. at 361 (Harlan, J., concurring). *See Rakas v. Illinois,* 439 U.S. 128, 143–144, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *State v. Williams,* 73 Ohio St.3d 153, 166–167, 652 N.E.2d 721 (1995).

{¶18} The Ohio Supreme Court has recognized seven exceptions to the search warrant requirement: (a) [a] search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable

cause to search and the presence of exigent circumstances; (f) the plain-view doctrine; or (g) an administrative search. *State v. Akron Airport Post No. 8975,* 19 Ohio St.3d 49, 51, 482 N.E.2d 606 (1985), certiorari denied, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 777 (1986); *Stone v. Stow,* 64 Ohio St.3d 156, 164, 593 N.E.2d 294, fn. 4 (1992).

**{¶19}** The exigent circumstances exception "is founded on the premise that the existence of an emergency situation, demanding urgent police action, may excuse the failure to procure a search warrant." *State v. Cheadle,* 2d Dist. Miami No. 00CA03, 2000 WL 966167, (July 14, 2000). "Whether exigent circumstances are present is determined through an objective test that looks at the totality of the circumstances confronting the police officers at the time of the entry." *State v. Enyart,* 10th Dist. Franklin Nos. 08AP–184, 08AP–318, 2010-Ohio-5623, 2010 WL 4681889, ¶ 21.

**{¶20}** In the case *sub judice*, FF Brown testified that by the time the CODE detective entered the premises and began collecting evidence, the fire was completely extinguished, the potential evidence relating to the marijuana grow operation was not damaged, and the electricity had been turned off to the residence. (T. at 33-34, 37). Det. Thomas testified that he was assured the fire was out, and the home was safe for him to enter. (T. at 53). Det. Thomas also stated that he was not told that any of the evidence was in danger of being damaged by smoke, water or fire. (T. at 53). Det. Thomas admitted that he did not make any attempt to contact the court or the prosecutor's office to obtain a search warrant prior to entering the premises. (T. at 51, 55).

**{¶21}** Based on the foregoing, we do not find exigent circumstances existed that required or allowed for a warrantless search of the premises. We therefore find no error in the trial court's suppression of the evidence collected in this matter.

{¶22} Appellant's sole assignment of error is overruled.

{¶23} Accordingly, the judgment of the Licking County Common Pleas Court is affirmed.


By: Wise, John, P. J.

Gwin, J., and

Wise, Earle, J., concur.


JWW/d 0817