[Cite as *State v. Russo*, 2020-Ohio-3236.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-L-080** |
| CHRISTOPHER RUSSO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2018 CR 000476.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, Ohio 44077 (For Plaintiff-Appellee).

*Leigh S. Prugh*, Prugh Law, LLC, P.O. Box 450861, Westlake, Ohio 44145 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Christopher Russo ("Mr. Russo"), appeals from the judgment of the Lake County Court of Common Pleas, which denied his motion to suppress the evidence that led to his conviction. Mr. Russo was involved in a two-car collision, after which he was arrested for operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them ("OVI"). The trial court overruled the motion, finding the officer had a reasonable and articulable suspicion of criminal activity, which permitted him

to detain Mr. Russo and conduct field sobriety testing. The trial court went on to determine there was probable cause to arrest Mr. Russo for OVI. Subsequently, a jury found Mr. Russo guilty of OVI, which was a fourth-degree felony since this was his fourth offense, and the court later found Mr. Russo guilty of a failure to maintain assured clear distance ahead, a minor misdemeanor.

{¶2} Mr. Russo timely appealed and raises two assignments of error regarding the trial court's denial of his motion to suppress. Mr. Russo argues that (1) the officer did not possess reasonable suspicion to justify initiating field sobriety tests; and (2) the horizonal gaze nystagmus test ("HGN test") conducted by the officer should not have been included as a contributor to probable cause because it was not conducted in substantial compliance with National Highway Traffic Safety Administration ("NHTSA") standards.

{¶3} We find Mr. Russo's assignments of error are without merit. Firstly, we find that under the totality of the circumstances, the trial court's factual findings are supported by competent, credible evidence and it correctly found a reasonable, articulable suspicion of criminal activity existed to conduct field sobriety tests. The officer, who had over 20 years of experience, observed that Mr. Russo had an odor of alcohol emanating from his person, glassy eyes, dilated pupils, and slow and deliberate speech when the officer responded to the scene of a violent impact two-car collision in which Mr. Russo rear-ended the victim's vehicle with such force that his air bag deployed.

{¶4} Secondly, the trial court's determination that probable cause existed to arrest Mr. Russo for OVI after finding multiple indicia of intoxication, combined with signs of erratic driving, i.e., the crash itself, is also supported by competent, credible evidence

2

in this record. Since the HGN test was only partially administered because Mr. Russo stopped the testing, the trial court found the officer's observations during the HGN test to be a sign of intoxication. Even without the two clues of intoxication from the partially administered HGN test, there was more than enough to establish probable cause to arrest Mr. Russo for OVI under the circumstances of this case.

{¶5} The judgment of the Lake County Court of Common Pleas is affirmed.

**Substantive and Procedural History**

{¶6} After being bound over by the Mentor Municipal Court, the Lake County Grand Jury indicted Mr. Russo on one count of OVI, a felony of the fourth degree, in violation of R.C. 4511.19(A)(1)(a), because he had previously been convicted of or pled guilty to three additional violations of R.C. 4511.19(A) and (B) in the last ten years; and a second count of failure to maintain assured clear distance ahead, an unclassified misdemeanor in violation of R.C. 4510.16. This second count was amended to a minor misdemeanor prior to trial.

*Motion to Suppress*

{¶7} Mr. Russo filed a motion to suppress evidence/motion in limine for an order prohibiting any evidence of his "sobriety." This evidence included (1) tests of Mr. Russo's coordination and sobriety; (2) observations and opinions of the police officers that stopped, observed, arrested, and/or tested Mr. Russo regarding his sobriety; (3) objects seized from Mr. Russo's vehicle; (4) results of any and all field sobriety exercises administered by the police officer; and (5) statements taken from or made by Mr. Russo. Specifically, Mr. Russo argued Officer John Stirewalt ("Officer Stirewalt") of the City of Mentor Police Department lacked a reasonable and articulable suspicion to continue the

3

detention of Mr. Russo after investigating the car accident and further, lacked probable cause to arrest him for OVI. In addition, he maintained Officer Stirewalt did not properly administer the field sobriety tests.

{¶8} During the hearing, the state presented evidence by way of Officer Stirewalt's dash cam, as well as the officer's testimony. Mr. Russo did not present any witnesses. Officer Stirewalt testified as follows:

{¶9} On April 15, 2018, shortly before 4:00 p.m., Officer Stirewalt, an officer with 21 and a half years of experience at the time of the incident, was called to the scene of a two vehicle rear-end accident on Route 306, just south of Lakeshore Blvd. When he arrived at the scene, he observed that both drivers – Mr. Russo and Jessica Howells ("Ms. Howells") - were standing on opposite sides of the four-lane road.

{¶10} Officer Stirewalt spoke with Ms. Howells first, who told the officer she was preparing to turn left with her minivan into a driveway when Mr. Russo rear-ended her with his Honda Accord. She told him her neck hurt and that she wanted a medic. Officer Stirewalt then approached Mr. Russo, who told him Ms. Howells stopped suddenly and that he was not injured. Officer Stirewalt then assisted the fire department that arrived on the scene and proceeded to gather insurance information, phone numbers, and addresses from the two drivers.

{¶11} During one of his encounters with Mr. Russo, Officer Stirewalt smelled an odor of alcohol emanating from Mr. Russo's person and observed that "his eyes were glassy, his pupils were constricted, he was very slow and deliberate with his speech so I figured at the time I thought he may have been drinking." Officer Stirewalt could not remember if it was during his first encounter with Mr. Russo (when he asked Mr. Russo if

he was injured after arriving on the scene) or his second encounter (to gather information) but believed it was during the second encounter that he initially smelled the odor of alcohol.

{¶12} While waiting for more officers to arrive for assistance, Officer Stirewalt is heard on the dashcam video informing either a medic or a fireperson that he intended to perform field sobriety tests on Mr. Russo after another officer's arrival.

{¶13} Several minutes later another officer, Officer Yenkevich, responded to the scene. Officer Stirewalt directed him to take over while he gave field sobriety tests to Mr. Russo. Officer Stirewalt's dashcam video shows him driving to the corner where Mr. Russo was standing and Mr. Russo meeting him in front of the officer's vehicle. Officer Stirewalt testified that he again noted Mr. Russo's speech was slow and deliberate and that he could smell an odor of alcohol on Mr. Russo's person.

{¶14} Officer Stirewalt intended to perform three field sobriety tests - the HGN test, the walk and turn, and the one-leg stand. The dashcam video depicts Officer Stirewalt begin the HGN test. He is seen directing Mr. Russo to get his hands out of his pockets and to follow his pen. Officer Stirewalt observed Mr. Russo had equal tracking in his pupils, which he testified one needs to look for in order to perform the test. He also observed two clues of impairment in that Mr. Russo had a lack of smooth pursuit in each eye. He was not able to complete the test, however, because Mr. Russo stopped him and said, "I'm good, I don't want to do anymore." Mr. Russo turned, put his hands behind his back, and refused to make any statements. Mr. Russo refused to finish the HGN test or perform any additional field sobriety tests.

5

{¶15} Officer Stirewalt then handcuffed Mr. Russo and placed him into the police cruiser, where he read Mr. Russo his Miranda rights. Officer Stirewalt drove Mr. Russo to the Mentor Police Department were Mr. Russo refused to take a breathalyzer test.

{¶16} On cross-examination, Officer Stirewalt testified that it was raining throughout the day and at the time of the incident. There were no witnesses to the accident, and he did not determine whether Ms. Howells had her turn signal on. Officer Stirewalt did not inquire further as to whether Mr. Russo was injured despite his air bag deploying at the time of the crash. He also testified that he did not notice Mr. Russo slurring his speech and that Mr. Russo had no trouble producing his driver's license and insurance documents.

{¶17} Upon review of the arguments, testimony, and evidence presented, the trial court denied Mr. Russo's motion to suppress. The court found that based upon Officer Stirewalt's observations, experience, and training, he had a reasonable and articulable suspicion of criminal activity, which permitted him to detain Mr. Russo and conduct field sobriety testing. Officer Stirewalt observed Mr. Russo's eyes were glassy, his pupils were constricted, his speech was slow and deliberate, and the odor of alcohol was emanating from his person. While the defense argued that Mr. Russo's airbag deploying and the rain could have caused Mr. Russo's glassy eyes and constricted pupils, Mr. Russo stated to the officer that he was not injured and never brought up the rain as a causative factor. He also ran into Ms. Howells' minivan at a sufficient speed for the airbag to deploy, which the trial court found could indicate a lack of coordination. Given the totality of the circumstances, including Officer Stirewalt's 20-plus years of experience, the trial court

found a reasonable suspicion of criminal activity, and thus, a reasonable basis to perform field sobriety testing.

{¶18} As to Mr. Russo's argument that the field sobriety tests were not administered in a reasonable and acceptable manner, based on the dashcam video, the court found the HGN test was administered in a reasonable and acceptable manner.

{¶19} Lastly, the trial court found that even without the results of field sobriety testing, Officer Stirewalt had probable cause to arrest Mr. Russo based on his glassy eyes, constricted pupils, slow and deliberate speech, odor of alcohol emanating from his person, erratic driving, Mr. Russo's denial that he had been drinking, his lack of smooth pursuit in both eyes during the HGN test, Mr. Russo's decision to not complete the field sobriety tests by saying "I'm good," and Mr. Russo turning and placing his hands behind his back without being asked before Officer Stirewalt arrested him.

### Trial and Sentencing

{¶20} Mr. Russo was found guilty by a jury of OVI, with three additional findings that Mr. Russo had been previously convicted of or pleaded guilty to three violations of R.C. 4511.19(A) or (B).

{¶21} Subsequently, the court found Mr. Russo guilty of failure to maintain assured clear distance ahead, a minor misdemeanor. The court sentenced Mr. Russo to five years of community control sanctions, including a 100-day jail sentence with credit for 40 days served. Mr. Russo's vehicle was forfeited, and his license was suspended for five years.

{¶22} Mr. Russo timely appealed and raises two assignments of error:

{¶23} "[1.] The trial court erred in denying Christopher Russo's motion to suppress the evidence against him because arresting Officer Stirewalt did not possess reasonable suspicion to justify initiating field sobriety tests.

{¶24} "[2.] The trial court erred in denying Christopher Russo's motion to suppress the evidence against him because the horizontal gaze nystagmus test conducted by Officer Stirewalt should not have been included as a contributor to probable cause."

### Motion to Suppress Standard of Review

{¶25} When reviewing  a motion to suppress, this court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Kirtland Hills v. Fuhrman,* 11th Dist. Lake No. 2007-L-151, 2008-Ohio-2123, ¶8, citing *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982).  "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*, quoting *State v. Retherford*, 93 Ohio App.3d 586, 592 (2d Dist.1994).

### Reasonable Suspicion

{¶26} In his first assignment of error, Mr. Russo contends the trial court erred in finding Officer Stirewalt had a reasonable suspicion to justify initiating field sobriety testing.

{¶27} "The Fourth Amendment [to] the United States Constitution, as well as Article One, Section Fourteen, of the Ohio Constitution, guarantee[s] 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon

8

probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'  When a police officer stops an automobile and detains its occupants, a 'seizure' is committed within the meaning of the Fourth and Fourteenth Amendments of the United States Constitution." *Kirtland Hills v. Strogin,* 11th Dist. Lake No. 2005-L-073, 2006-Ohio-1450, ¶12, quoting *State v. Wojtaszek,* 11th Dist. Lake No. 2002-L-016, 2003-Ohio-2105, ¶15, citing *Delaware v. Prouse*, 440 U.S. 648 (1979), paragraph two of the syllabus.

{¶28}  "It is well established that an officer may stop a motorist upon his or her observation that the vehicle in question violated a traffic law."  *Id.* at ¶13, quoting *State v. Boczar,* 11th Dist. Ashtabula No. 2004-A-0063, 2005-Ohio-6910, ¶11, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996).  Moreover, this court has repeatedly held that when a police officer witnesses a minor traffic violation, he or she is warranted in making a stop to issue a citation.  *Waite Hill v. Popovich,* 11th Dist. Lake No. 2001-L-227, 2003-Ohio-1587, ¶14.

{¶29}  However, because any further detention is a greater invasion into an individual's liberty interests, an officer may not request a motorist to perform field sobriety tests unless the request is separately justified by a reasonable suspicion based upon articulable facts that the motorist is intoxicated.  *Strogin* at ¶13, citing *State v. Evans*, 127 Ohio App.3d 56, 62 (11th Dist.1998), citing *State v. Yemma*, 11th Dist. Portage No. 95-P-0156, 1996 WL 495076 (Aug. 9, 1996).  A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they

9

unfold. *Id.*, citing *Popovich* at ¶11; *State v. Dye,* 11th Dist. Portage No. 2001-P-0140, 2002-Ohio-7158, ¶18.

{¶30} In *Evans*, we noted a host of factors collected from various cases which may be considered by a court to determine whether an officer had reasonable suspicion to administer field sobriety tests under the totality of the circumstances:

{¶31} "(1) the time of day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ('very strong,['] 'strong,' 'moderate,' 'slight,' etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably." *Id.* at ¶14-15, quoting *Evans* at 63, fn. 2.

{¶32} We note that the foregoing factors are assistive guides in the determination of reasonable suspicion. Accordingly, no one factor is dispositive, and, moreover, the list

10

does not represent an exhaustive account of factors which can or should be considered. *Id.* at ¶16, citing *Boczar* at ¶14. Generally, courts approve a request to submit to field sobriety testing only where the officer based his or her decision on a number of these factors. *Id.*, citing *Evans* at 63.

{¶33} Mr. Russo contends that only three of the *Evans* factors are present and that the circumstances presented make them questionable. Mr. Russo argues that the accident was not caused by his erratic driving or lack of coordination, as the trial court indicated, but the accident was caused by Ms. Howells' abrupt stop to make a left turn on a rainy day. The officer's observations as to his glassy eyes and slow and deliberate speech were also unfounded because his glassy eyes were due to the rain and the sudden deployment of his airbag. His slow and deliberate speech was simply his normal pace and enunciation. Moreover, Officer Stirewalt testified he understood everything Mr. Russo said and Mr. Russo competently answered his questions. According to Mr. Russo, Officer Stirewalt also failed to qualify the odor of alcohol emanating from his person as "strong." In addition, the medics on the scene never indicated that they observed any signs of impairment. Finally, Mr. Russo denied drinking any alcohol.

{¶34} While Mr. Russo's argument may seem at first blush persuasive, a review of the record and evidence presented at the motion to suppress hearing reveals otherwise and supports the trial court's factual findings. Contrary to Mr. Russo's assertions, Mr. Russo never stated to Officer Stirewalt that the rain was an issue or that he was injured. Mr. Russo collided with Ms. Howells' minivan with such force that both vehicles suffered extensive damage and Mr. Russo's air bag deployed. We agree with the trial court that this is a sign of erratic driving and an indicator of lack of coordination. Officer Stirewalt,

11

an experienced officer, noticed an odor of alcohol when Mr. Russo began speaking and that Mr. Russo's eyes were glassy, his pupils were dilated, and his speech was slow and deliberate. The dash cam video corroborates Officer Stirewalt's testimony.

{¶35} We are bound to accept factual determinations of the trial court so long as they are supported by competent and credible evidence, and the evaluation of evidence and the credibility of the witnesses are issues for the trier of fact in the hearing on the motion to suppress. *State v. Macklin*, 5th Dist. Fairfield No. 17-CA-39, 2018-Ohio-2975, ¶19, citing *State v. Myer*, 5th Dist. Perry No. 16-CA-00007, 2017-Ohio-1046, ¶15, citing *State v. Mills*, 62 Ohio St.3d 357 (1992). Our role in reviewing a trial court's ruling on a motion to suppress is not to reevaluate the evidence or the credibility of the witnesses but to determine whether the trial court's application of the law to the facts, as the trial court found them to be, is appropriate. *Id.,* citing *Myer* at ¶16, citing *Mills* at 366; *State v. Williams*, 86 Ohio App.3d 37, 41 (4th Dist.1993).

{¶36} Mr. Russo cites several cases in support in support of his argument. *See Whitehouse v. Stricklin,* 6th Dist. Lucas No. L-10-1277, 2012-Ohio-1877; *State v. Morgan,* 2d Dist. Clark No. 07-CA-67, 2007-Ohio-6691; *State v. Derov,* 7th Dist. Mahoning No. 07 MA 71, 2009-Ohio-5513; and *State v. Baker*, 5th Dist. Ashland No. 17-COA-308, 2018-Ohio-2285. Upon review, however, we do not find these similar to the circumstances presented herein.

{¶37} In *Stricklin*, the appellant was pulled over at 1:26 a.m. for a de minimis traffic violation, i.e., a broken headlight. *Id.* at ¶3. The officer did not notice any signs of intoxication until after the appellant fixed his broken headlight, nor did the appellant demonstrate any signs of erratic driving or exhibit any other signs of impairment. *Id.* at

12

¶15. The only apparent factors were a slight odor of alcohol and glassy, bloodshot eyes. *Id.* The Sixth District held that once the officer ascertained the appellant had a working headlight, she no longer had a sufficient reason to continue questioning or detaining him. *Id.* at ¶16. Thus, the officer lacked a reasonable, articulable suspicion that criminal activity was afoot to conduct field sobriety tests.

{¶38} Similarly, in *Morgan*, an officer observed the appellant drive outside the marked lane of travel, i.e., left of center in the strike zone of a turn lane, late at night. *Id.* at ¶3. The officer discovered the appellant was driving outside the time of his driving privileges, smelled of alcohol when he spoke to the officer, and confirmed that he had been drinking earlier in the day. *Id.* at ¶4. He subsequently refused field sobriety testing, and the officer placed him under arrest. *Id.* At the jail, the officer again asked the appellant to take a breathalyzer test, which the appellant refused. *Id.*

{¶39} In granting the appellant's suppression motion, the trial court noted that while the officer had adequate grounds to stop the appellant's vehicle, he did not have grounds to require the appellant to undergo field sobriety tests or a breathalyzer test. *Id.* at ¶6. The Second District affirmed the trial court, finding that a commission of a de minimis marked-lane violation, coupled with the officer's detection of an odor of alcohol and an admission that the appellant drank earlier that day constituted an insufficient articulable suspicion to justify the appellant's detention for field sobriety testing without any other signs of intoxication. *Id.* at ¶15.

{¶40} The same circumstances were also present in *Derov,* where an officer initiated a stop of the appellant's car based upon expired tags on her license plate. *Id.* at ¶3. The officer had not observed erratic driving but had noticed a strong smell of alcohol

13

emanating from the appellant's vehicle. *Id..* The officer admitted the appellant had no difficulty producing her license and registration or exiting her car and demonstrated no physical signs of impairment due to alcohol consumption. *Id.* The Seventh District, sua sponte, found plain error because there was a lack of reasonable suspicion to conduct field sobriety tests, since the officer did not witness erratic driving or observe any signs of impairment but rather asked the appellant to submit to field sobriety tests based solely on the time of night, the appellant's red glassy eyes, and the fact that he noticed a strong smell of alcohol coming from her person. *Id.* at ¶15-17.

{¶41} Likewise in *Baker*, the Fifth District noted the appellant was pulled over for an equipment violation without any indication of erratic driving. *Id.* at ¶22. The only other factors put forth by the state were the time of night, that the stop was close to a number of liquor establishments, and that the appellant was attempting to hide his eyes. *Id..* The Fifth District determined that the officer did not have a reasonable articulable suspicion based on the condition of the appellant's eyes and the strong odor of alcohol without any additional indicia of intoxication. *Id.* at ¶26.

{¶42} We agree with the Fifth District in *Baker* that "reasonable suspicion is more than a hunch, but less than the level of suspicion needed for probable cause" and that "a motorist need not display every possible indication of being under the influence for a reasonable, articulable suspicion grounds to exist for the trooper to proceed with field sobriety testing." *Id.* at ¶26. The situation presented here is not the case of an equipment violation, such as a broken headlight or expired license tags, or a de minimis traffic violation that occurred late at night with simply an odor of alcohol emanating from the driver's person.

14

{¶43}   We find Mr. Russo's erratic driving distinguishable in that he rear-ended Ms. Howell's vehicle in the middle of the afternoon, causing extensive damage to both vehicles and with such force that Mr. Russo's air bag deployed.  In addition, Officer Stirewalt noticed the odor of alcohol emanating from Mr. Russo's breath upon speaking with him and observed that Mr. Russo's eyes were glassy, his pupils were dilated, and his speech was slow and deliberate.

{¶44}   And, as we already noted above, while the *Evans* factors are relevant, not all must be present for an officer to have reasonable suspicion.  *See Macklin*, *supra*, at ¶31 (a driver "need not display every possible indication of being under the influence in order for reasonable, articulable suspicion grounds to exist for [an officer] to proceed with the field sobriety testing").

{¶45}   We must look at the totality of the circumstances through the eyes of Officer Stirewalt, giving due deference to his training and experience, to determine whether reasonable suspicion existed for the officer to conduct field sobriety testing.  In this case, at least four of the *Evans* factors were met.  These factors, along with Officer Stirewalt's experience, established a reasonable articulable suspicion that further investigation was warranted to determine whether Mr. Russo should be arrested for OVI.

{¶46}   This court has held that "[w]here a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists." *State v. Wiesenbach,* 11th Dist. Portage No. 2010-P-0029, 2011-Ohio-402, ¶24, quoting *State v. Strope,* 5th Dist. Fairfield No. 08 CA 50, 2009-Ohio-3849, ¶19; *State v. Gregg,* 6th Dist. Huron No. H-06-030, 2007-Ohio-4611, ¶19; *State v. Mapes,* 6th Dist.

Fulton No. F-04-031, 2005-Ohio-3359, ¶42 (finding reasonable suspicion to conduct sobriety tests when the officer "noticed an odor of alcohol in the vehicle as well as appellant's glassy and bloodshot eyes * * * [and] appellant's speech was 'somewhat slurred'").

{¶47} In his reply brief, Mr. Russo contends the state's reliance on *State v. Tournoux,* 11th Dist. Portage No. 2009-P-0065, 2010-Ohio-2154; *State v. Wojewodka*, 11th Dist. Portage No. 2009-P-0029, 2010-Ohio-973; and *State v. Seal*, 11th Dist. Lake No. 2003-L-163, 2004-Ohio-5938, is misplaced.

{¶48} In *Tournoux*, we determined there was sufficient reasonable suspicion to conduct sobriety field tests because of the "odor of alcoholic beverage, [the appellant's] glassy and bloodshot eyes, slurred speech, and difficulty when opening his window." *Id.* at ¶16. The officer pulled the appellant over when he noticed the appellant pulling out of a parking lot without his headlights illuminated. *Id.* at ¶2.

{¶49} In *Wojewodka*, the appellant was pulled over for speeding. *Id.* at ¶2. Upon approaching the appellant, the officer noticed the appellant's eyes were watery and red, his speech was slow, and when he exited the vehicle, a strong odor of alcohol remained. *Id.* at ¶16. We affirmed the trial court's finding that the officer's conduct in performing field sobriety tests was proper. *Id.*

{¶50} Lastly, in *Seal*, the appellant had been involved in a traffic accident. *Id.* at ¶2. After the accident, the appellant's friends moved his motorcycle to a nearby gas station. *Id.* When the police arrived on the scene, an officer instructed the crowd not to remove the motorcycle. *Id.* Soon after, the officer noticed it had been removed from the gas station and that a large group of motorcyclists had left the area. *Id.* at ¶3. The

16

appellant's motorcycle was not found among the group of motorcyclists driving down the highway. *Id.* The officer continued his search and discovered the appellant and his girlfriend a short time later driving further down the highway. *Id.* at ¶4. Throughout the officer's entire confrontation with the appellant, the officer noticed a strong odor of alcohol, that the appellant's eyes were bloodshot and glassy, and that his speech was slurred. *Id.* at ¶7.

{¶51} We affirmed the trial court's finding that reasonable suspicion existed to conduct field sobriety testing, finding that "[a]lthough some of the indicators standing alone do not conclusively indicate intoxication, viewed in light of the totality of the circumstances, these indicators provided [the officer] with a reasonable, articulable suspicion that [the appellant] was engaged in further criminal activity, specifically driving under the influence, to justify [the officer's] expanded investigation beyond the purposes of the initial stop." *Id.* at ¶22.

{¶52} A review of all of the cases cited by Mr. Russo and the state reminds us of the cornerstone of a Fourth Amendment reasonable suspicion analysis - every case is factually dependent and must be examined under the totality of those unique circumstances that support, or conversely, would not support, an officer's decision to detain a person in order to conduct field sobriety tests. As the Supreme Court of the United States has noted, "[t]he principal components of a *determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search*, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." (Emphasis added.) *Ornelas v. United States*, 517 U.S. 690, 696 (1996). A police

17

officer may draw inferences based on his own experience in deciding whether probable cause exists. *State v. Reed,* 5th Dist. Richland No. 16CA50, 2017-Ohio-2644, ¶34, citing *United States v. Ortiz,* 422 U.S. 891, 897 (1975).

{¶53} We agree with the trial court that under the totality of the circumstances and "based on his observations and his experience and training, Officer Stirewalt had a reasonable and articulable suspicion of criminal activity, which permitted him to detain [Mr. Russo] and conduct field sobriety testing."

{¶54} Mr. Russo's first assignment of error is without merit.

## Probable Cause

{¶55} In his second assignment of error, Mr. Russo contends the trial court erred in denying his motion to suppress because the HGN test should not have been included as a contributor to probable cause.

{¶56} In determining whether the police had probable cause to arrest an individual for OVI, courts consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonable trustworthy source of facts and circumstances, to cause a prudent person to believe that the suspect was driving under the influence. *State v. Osborne,* 11th Dist. Lake Nos. 2018-L-124, et al., 2019-Ohio-3235, ¶52, *appeal not allowed,* 157 Ohio St.3d 1512, 2019-Ohio-5193, citing *State v. Homan,* 89 Ohio St.3d 421, 427 (2000), citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964) and *State v. Timson,* 38 Ohio St.2d 122, 127 (1974). In making this determination, courts examine the "totality of facts and circumstances surrounding the arrest." *Id.* The totality of the circumstances can support a finding of probable cause to arrest, even where no field sobriety tests were administered or where the test results are excluded. *Id.*

18

{¶57} A review of the hearing transcript and the dash cam video reveals Officer Stirewalt was only able to administer a partial HGN test. He testified that he observed two clues, one in each eye, before Mr. Russo refused to complete the test by saying, "I'm good. I don't want to do anymore." Mr. Russo then voluntarily turned around – without being asked -- and put hands behind his back for Officer Stirewalt to arrest him.

{¶58} Based on the dash cam video, the trial court found that the HGN test was administered in a reasonable and acceptable manner. While Mr. Russo argues in his brief that Officer Stirewalt's testimony demonstrates he failed to conduct the field sobriety tests in accordance with the NHTSA standards, the evidence reveals the trial court used Officer Stirewalt's observations during the partially administered test, not the results.

{¶59} An officer may testify concerning the *results* of a field sobriety test administered in substantial compliance with the testing standards. *Osborne* at ¶44, citing *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, ¶9. Specifically, R.C. 4511.19(D)(4)(b)(i) provides that an officer may testify concerning the results of a field sobriety test "if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration[.]"

{¶60} In addition, a law enforcement officer may testify at trial regarding *observations* made during a defendant's performance of nonscientific standardized field sobriety tests. *Osborne* at ¶45, citing *Schmitt* at ¶15.

19

{¶61} A review of the hearing transcript reveals Officer Stirewalt and the trial court only referenced Officer Stirewalt's *observations* regarding the partially administered HGN test, not the test *results*. Officer Stirewalt could not have demonstrated the HGN test was administered in substantial compliance with NHTSA standards because the test was never completed. He only *observed* two clues before Mr. Russo abruptly terminated the test.

{¶62} We recently were confronted with a similar issue in *Osborne,* where the appellant argued that the state did not produce sufficient evidence of the applicable NHTSA standards and cited numerous instances of noncompliance with the NHTSA manual regarding the three field sobriety tests that were administered. *Id.* at ¶46. We found that we did not need to determine whether the officer's testimony demonstrated substantial compliance with the applicable standards because, although the trial court found they were administered in substantial compliance, the trial court had concluded that the tests "were admissible at trial as to the officer's *observations*. * * * Significantly, the trial court did not rule that the test *results* were admissible at trial." (Emphasis sic.) *Id.* at ¶47. We went on to find that "[s]imilarly, in determining that probable cause existed for Mr. Osborne's arrest, the trial court only referenced [the officer's] *observations* during the field sobriety testing, not the test *results.*" (Emphasis sic). *Id.* at ¶48. We concluded that the totality of the facts and circumstances, without reference to the field sobriety tests, supported a finding of probable cause to arrest the appellant for OVI. *Id.* Thus, even if the trial court erred in finding substantial compliance, such error was harmless under the circumstances. *Id.* at ¶49.

{¶63} In this case, the partial HGN test was not the determinative basis for the trial court's conclusion that Officer Stirewalt had probable cause to arrest Mr. Russo for driving under the influence of alcohol. The trial court found the following facts and circumstances supported a finding of probable cause: "erratic driving, Defendant's glassy eyes, constricted pupils, and slow and deliberate speech; the odor an alcoholic beverage coming from Defendant's person and Defendant's denial that he had been drinking; Defendant's lack of smooth pursuit in both eyes during the HGN test; Defendant's decision not to complete the field sobriety testing by saying 'I'm good;' and Defendant turning and placing his hands behind his back without being asked before Off. Stirewalt arrested him."

{¶64} Even if we eliminate the officer's observations that Mr. Russo exhibited two clues of impairment from a partial field sobriety test, there is more than enough to establish a finding of probable cause to arrest in this case. This court has held that both police testimony regarding a defendant's erratic driving and the refusal to submit to field sobriety tests are factors that may be considered in determining the existence of probable cause in an arrest for driving under the influence. *State v. Snowden*, 11th Dist. Trumbull No. 2014-T-0092, 2015-Ohio-2611, ¶34, citing *State v. Sitko*, 11th Dist. Portage No. 2011-P-0042, 2012-Ohio-2705, ¶28; *State v. Molk*, 11th Dist. Lake No. 2001-L-146, 2002-Ohio-6926, ¶19. Mr. Russo's erratic driving, coupled with the alcoholic odor, glassy eyes, constricted pupils, denial that he had been drinking, and abrupt termination of a field sobriety test, then turning and placing his hands behind his back without being asked, is more than enough under the totality of the circumstances to support a probable cause finding.

21

{¶65}  Mr. Russo's second assignment of error is without merit.

{¶66}  The judgment of the Lake County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.